1
2
3
4
5
6
7
8            UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON
                     AT SEATTLE
9
10  SAFEWORKS, LLC, a Washington limited        Case No. 08-cv-0922-JPD
    liability company,
11                                              ORDER DENYING PLAINTIFF'S
                Plaintiff,                      MOTION FOR SUMMARY JUDGMENT
12
        v.
13
    SPYDERCRANE.COM, LLC, an Arizona
14  corporation,

15              Defendant.

16

17            I.    INTRODUCTION AND SUMMARY CONCLUSION

18      This matter comes before the Court on Plaintiff SafeWorks, LLC's ("SafeWorks")

19  motion for summary judgment. Dkt. No. 40. SafeWorks has brought against Defendant

20  Spydercrane.com, LLC ("Spydercrane") claims for trademark infringement and federal and

21  state law claims for unfair competition. Dkt. Nos. 16, 45. SafeWorks now seeks summary

22  judgment on these claims, contending that Spydercrane willfully infringed SafeWorks'

23  incontestable SPIDER marks. After careful consideration of the motion, the opposition and

24  the reply brief, the supporting materials, the governing law and the balance of the record,

25  SafeWorks' motion for summary judgment, Dkt. No. 40, is DENIED.

26

## II. BACKGROUND

### A. SafeWorks and the SPIDER Marks

SafeWorks is based in Seattle, Washington and has offices throughout the United States, as well as offices in Canada, the United Arab Emirates and Belgium. Dkt. No. 44, ¶ 5. SafeWorks manufactures and sells lifting, hoisting, safety and access equipment for the construction, mining and maintenance industries. *Id.*, ¶ 7. SafeWorks and its predecessors have used the SPIDER marks in connection with the manufacture, marketing and sale of lifting, hoisting, safety and access equipment since 1947. *Id.* SafeWorks' predecessor first registered the SPIDER mark with the U.S. Patent and Trademark Office ("USPTO") in 1960. *Id.*, ¶ 8.

SafeWorks also contends that it manufactures and sells 20 different cranes under the SPIDER mark, and intends to expand its SPIDER product line to include more cranes. *Id.*, ¶¶ 29-30, 34. Spydercrane disputes that SafeWorks sells or intends to sell cranes. But while the parties may disagree about what makes a crane a crane, they can agree that there are distinct differences between Spydercrane's cranes and the cranes sold by SafeWorks. For example, SafeWorks' cranes use winches for lifting, are generally fixed to permanent structures, do not have long booms (*i.e.*, an extendable beam projecting outward from the crane's central body that is used for lifting and moving objects), do not have articulated legs, are not mounted to boats or trucks or are otherwise mobile, and have a comparatively low load rating. Dkt. No. 50, Exh. B; Dkt. No. 44, Exh. B.

### B. Spydercrane and the SPYDERCRANE Mark

Spydercrane is a crane distribution business based in Tempe, Arizona that sells truck-mounted cranes, cranes attached to boats and cranes with four articulated legs (also known as "mini-crawlers"). Dkt. No. 50, Exh. D. The cranes are manufactured by FURUKAWA UNIC Corporation of Japan. The cranes all have long booms that extend outward, have a maximum reach of 93 feet and have a load rating of up to 15 tons. Dkt. No. 50, Exh. H.

The SPYDERCRANE mark is used for Spydercrane's distribution business, and the mark generally appears next to Spydercrane's logo, which is a kind of stick drawing of a spider (albeit a four-legged one) with a hook dangling below. The SPYDERCRANE mark does not appear on the cranes sold by Spydercrane, which carry the UNIC mark, but the SPYDERCRANE mark is used, for example, on Spydercrane's website and in its advertising materials. Dkt. No. 50, Exh. I. Spydercrane has used the spydercrane.com website since September 2001 and Spydercrane.com, LLC was formed in May 2002. Dkt. No. 9, ¶ 4. The founders of the company selected the name "Spydercrane" in 1999. Dkt. No. 50, Exh. D.

C. Procedural History

This tangled web began when Spydercrane applied to register the SPYDERCRANE mark with the USPTO in 2008. In mid-May 2008, upon learning of the application, SafeWorks' counsel sent Spydercrane a cease and desist letter, demanding that Spydercrane end any further use of the terms "spyder," "spydercrane" or "spydercrane.com," including as its company name, and abandon any Internet domain names incorporating the terms "spyder" or "spydercrane." Dkt. No. 42, Exh. Q. Subsequent discussions between the parties proved unsuccessful, and on June 12, 2008, SafeWorks filed the instant action for trademark infringement and unfair competition. Dkt. No. 1.

In mid-July 2008, the USPTO issued an Office Action that refused to register the SPYDERCRANE mark and requested additional information from Spydercrane. Dkt. No. 42, Exh. R. According to the USPTO's website, Spydercrane subsequently abandoned the application, but then petitioned to revive the application on May 4, 2009. *See* USPTO website, www.uspto.gov (last visited Sept. 28, 2009). The petition to revive was granted, and, following additional information provided by Spydercrane, the USPTO issued a Notice of Publication on June 24, 2009, which stated that the SPYDERCRANE mark appears to be entitled to registration. *Id.*

On July 2, 2009, SafeWorks filed this motion for summary judgment. Dkt. No. 40. According to the USPTO's website, on July 14, 2009, the SPYDERCRANE mark was published in the USPTO's Official Gazette for the purpose of permitting opposition to the registration of the mark by "any person who believes he will be damaged by the registration of the mark." *See* USPTO website, www.uspto.gov (last visited Sept. 28, 2009). Opposition to the USPTO's registration of the SPYDERCRANE mark appears to be forthcoming. *Id.*

## III. JURISDICTION

Pursuant to 28 U.S.C. § 636(c), the parties have consented to having this matter heard by the undersigned United States Magistrate Judge. Dkt. No. 13. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a). Venue is proper under 28 U.S.C. § 1391(b).

## IV. DISCUSSION

### A. Summary Judgment Standard

"Claims lacking merit may be dealt with through summary judgment under Rule 56" of the Federal Rules of Civil Procedure. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). Summary judgment "shall be entered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is "genuine" if it constitutes evidence with which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). That genuine issue of fact is "material" if it "might effect the outcome of the suit under the governing law." *Id.*

When applying these standards, the Court must view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. *See United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1013 (9th Cir. 2006). The moving party can carry its initial burden by producing evidence that negates an essential element of the nonmoving

party's claim, or by establishing that the nonmoving party does not have enough evidence of an essential element to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once this has occurred, the procedural burden shifts to the party opposing summary judgment, who must go beyond the pleadings and affirmatively establish a genuine issue on the merits of the case. Fed. R. Civ. P. 56(e). The nonmovant must do more than simply deny the veracity of everything offered by the moving party or show a mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The mere existence of a scintilla of evidence in support of the plaintiff's position is likewise insufficient to create a genuine factual dispute. *Anderson*, 477 U.S. at 252. To avoid summary judgment, the nonmoving party must, in the words of Rule 56, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The nonmoving party's failure of proof concerning an essential element of its case necessarily "renders all other facts immaterial," creating no genuine issue of fact and thereby entitling the moving party to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

B.  Applicable Law

SafeWorks brings its trademark infringement and federal unfair competition claims under sections 32 and 43(a) of the Lanham Act, respectively. 15 U.SC. §§ 1114, 1125(a). SafeWorks brings its state unfair competition claim under Washington's Unfair Business Practices and Consumer Protection Act. R.C.W. § 19.86 *et seq.*

C.  SafeWorks' Trademark Infringement Claim

To establish trademark infringement, a plaintiff must demonstrate that it has a valid mark, it is the senior mark, and the defendant's mark is likely to cause confusion in the marketplace. *See Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1046-47 (9th Cir. 1999). The "likelihood of confusion" requirement directly advances the dual purposes of infringement law: "ensuring that owners of trademarks can

benefit from the goodwill associated with their marks and that consumers can distinguish among competing producers." *Thane Int'l v. Trek Bicycle Corp.*, 305 F.3d 894, 901 (9th Cir. 2002). The question whether an alleged trademark infringer's use of a mark creates a likelihood of confusion among the consuming public is the "core element" of trademark infringement law. *Id.* Here, the validity and priority of SafeWorks' SPIDER mark is not disputed; the only issue is whether likelihood of confusion exists between the SPIDER and SPYDERCRANE marks.

The Ninth Circuit has identified eight factors relevant to determining whether confusion is likely: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks and names; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *See AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). Whether there is a likelihood of confusion is a question of fact. *Quicksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 759 (9th Cir. 2006). "A question of fact may be resolved as a matter of law if reasonable minds cannot differ and the evidence permits only one conclusion." *Id.* However, if a genuine issue of fact exists regarding likelihood of confusion, a district court may not grant summary judgment. *See Thane*, 305 F.3d at 901. The Ninth Circuit has cautioned that "district courts should grant summary judgment motions regarding the likelihood of confusion sparingly, as careful assessment of the pertinent factors that go into determining likelihood of confusion usually requires a full record." *Id.* at 901-02.

The Ninth Circuit has advised that weighing the eight *Sleekcraft* factors is not like counting beans. "Rather, the factors are intended to guide the court in assessing the basic question of likelihood of confusion." *Dreamwerks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998) (internal quotation marks omitted). "Some factors are much more important than others, and the relative importance of each individual factor will be case-

specific." *Brookfield*, 174 F.3d at 1054. The Court will analyze each of the *Sleekcraft* factors in turn.

### 1. Strength of the Mark

"Trademark law offers greater protection to marks that are 'strong,' i.e., distinctive." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992). "The strength of a mark is determined by its placement on a continuum of marks from 'generic,' afforded no protection; through 'descriptive' or 'suggestive,' given moderate protection; to 'arbitrary' or 'fanciful,' awarded maximum protection." *Id.* (internal quotation marks omitted).

Generic marks are "those that refer to the genus of which the particular product is a species." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (internal quotation marks omitted). "Descriptive terms directly describe the quality or features of the product." *Brookfield*, 174 F.3d at 1058 n.19. "A suggestive mark conveys an impression of a good but requires the exercise of some imagination and perception to reach a conclusion as to the product's nature." *Id.* Finally, "[a]rbitrary and fanciful marks have no intrinsic connection to the product with which the mark is used; the former consists of words commonly used in the English language . . . whereas the latter are wholly made-up terms." *Id.* (citation omitted).

Identifying whether a mark is generic, descriptive, suggestive, arbitrary or fanciful, however, is only the first step of the inquiry. The second step is to determine the strength of the mark in the marketplace, *i.e.*, the commercial strength of the mark. *One Industries, LLC v. Jim O'Neal Distributing, Inc.*, 2009 U.S. App. LEXIS 18967, \*24 (9th Cir. Aug. 24, 2009). "When similar marks permeate the marketplace, the strength of the mark decreases. In a crowded field of similar marks, each member of the crowd is relatively weak in its ability to prevent use by others in the crowd." *Id.* at \*24-25 (internal quotation marks omitted).

SafeWorks contends that its SPIDER mark is suggestive, affording it moderate protection, and that it is extremely strong in the marketplace in view of its long history of continuous use and SafeWorks' "active prosecution of infringers." Dkt. No. 40 at 13.

Spydercrane asserts that the SPIDER mark is descriptive. Dkt. No. 49 at 11. Spydercrane appears to concede that the SPIDER mark is commercially strong with respect to lifting, hoisting, safety and suspended access equipment, but disputes that the mark has any strength in the market for mini-crawler or truck-mounted cranes (apart from the SPYDERCRANE mark) that are sold by Spydercrane. *Id.*

The Court is satisfied that SafeWorks' mark falls into the suggestive category, as the mark requires the exercise of some imagination to determine the nature of the products sold under that mark. In other words, the SPIDER mark does not merely describe some quality or feature of the product line. With regard to the commercial strength of the SPIDER mark, the Court agrees that the mark is very strong with regard to lifting, hoisting, safety and suspended access equipment.

However, Spydercrane asserts that there are separate markets for cranes which would eliminate the likelihood of confusion. This is a fact issue to be resolved at trial. Moreover, while SafeWorks contends that its SPIDER mark is commercially strong because it actively prosecutes infringers, Dkt. No. 40 at 13, this contention is seriously undercut by the fact that it never discovered Spydercrane's use of the SPYDERCRANE mark until 2008, and only then because it was notified by the USPTO upon Spydercrane's attempt to register the SPYDERCRANE mark. Dkt. No. 42, Exh. Q. Had SafeWorks been diligently enforcing its SPIDER mark, it would have discovered Spydercrane's use of the SPYDERCRANE mark sooner. *See E-Systems, Inc. v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir. 1983). SafeWorks' failure to learn of Spydercrane's use of the SPYDERCRANE mark sooner points toward the potential existence of a separate market and has an impact on the strength of the SPIDER mark in the crane market.

In sum, the Court finds that, on the record before it, there is an issue of fact regarding the commercial strength of the SPIDER mark.

### 2. Proximity of the Goods

"Related goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods." *Brookfield*, 174 F.3d at 1055. "In other words, the closer the parties are in competitive proximity, the higher the likelihood of confusion." *Rearden LLC v. Rearden Commerce, Inc.*, 597 F. Supp. 2d 1006, 1020 (N.D. Cal. 2009). The focus of the inquiry is not on the relatedness of each party's "prime directive," but rather on whether customers are likely somehow to associate Spydercrane's products with SafeWorks. *See Brookfield*, 174 F.3d at 1056. Factors to consider in determining the degree of proximity of the goods include whether the goods are complimentary, whether the goods are sold to the same class of purchasers, and whether the goods are similar in use and function. *See Sleekcraft*, 599 F.2d at 350.

SafeWorks asserts that its products are directly competitive with Spydercrane's products because "both parties sell cranes to the construction industry." Dkt. No. 40 at 8. SafeWorks also contends that "there is substantial overlap between the uses and functional features of SafeWorks and Defendant's products." *Id.* at 9. Spydercrane, on the other hand, argues that the parties' products are not closely related and that neither party sells the other party's products. Dkt. No. 49 at 12. This is a fact-intensive analysis and therefore militates against a decision on summary judgment.

### 3. Similarity of the Marks and Names

Similarity of marks is "tested on three levels: sight, sound, and meaning," and "similarities weigh more heavily than differences." *Sleekcraft*, 599 F.2d at 351. The marks "must be considered in their entirety and as they appear in the marketplace." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000).

The similarity of name between "SPIDER" and "SPYDERCRANE" is stronger than the similarity of the marks. However, the names must be considered in their entirety and as they appear in the marketplace, and the addition of "crane" to "Spyder" with no space in

between does serve to distinguish what would otherwise be two very similar looking and sounding names. Moreover, while the two names both use Spider/Spyder, it is worth noting that "Spider" and "Spyder" are relatively common as names or name elements in the commercial world. All of this should be explored at time of trial rather than being dealt with on summary judgment.

### 4. Evidence of Actual Confusion

Evidence that use of a mark or name has already caused actual confusion as to the source of a product is "persuasive proof that future confusion is likely." *Sleekcraft*, 599 F.2d at 352. To constitute trademark infringement, there must be confusion as to an appreciable number of reasonably prudent people with respect to the source of a product. *See Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1151 (9th Cir. 2002). However, actual confusion is hard to prove, so the absence of such evidence is generally not noteworthy. *See Brookfield*, 174 F.3d at 1050.

Plaintiff admitted that there was no evidence of actual confusion. Thereafter, however, an individual at Monument Steel was looking for Spydercrane parts and he called a Spider Staging (a division of SafeWorks) office in Denver instead to inquire about parts. Dkt. No. 56. Defendant dismisses the declaration, claiming it constitutes inadmissible hearsay,[1] and, in any event, does little to demonstrate actual confusion given that it stands alone in the eight-year period of time that Spydercrane has been in business. The record on this issue also makes summary judgment inappropriate.

---

[1] Because it is not offered for the truth of the matter asserted — SafeWorks was not the source of the parts needed by the caller — it is not hearsay. The evidence is offered to demonstrate the lack of truth (or confusion) of the caller. *See* 5-5 ANNE GILSON LALONDE, GILSON ON TRADEMARKS § 5.04 (consumers' statements indicating that defendant's goods were made by plaintiff are generally not offered for the truth of the matter asserted and therefore are not hearsay).

ORDER
PAGE - 10

### 5. Marketing Channels Used

"Convergent marketing channels increase the likelihood of confusion." *Sleekcraft*, 599 F.2d at 353. SafeWorks asserts that the parties use the same marketing channels, specifically, the Internet, trade shows, print advertising, and press releases. Dkt. No. 40 at 15-16. Spydercrane disputes that the parties use the same marketing channels. Dkt. No. 49 at 12-13.

The fact that Spydercrane and SafeWorks both utilize the Internet says little about having convergent marketing channels, as virtually all businesses that sell goods and services today have some sort of online presence. *See Rearden*, 597 F. Supp. 2d at 1024 ("The vast majority of companies today utilize some form of an Internet site and, therefore, this factor alone cannot be determinative.").

With regard to print advertising, "trade publications run the gamut from those narrowly focused on a particular sub-specialty to those dedicated simply to 'technology.'" *Id.* Therefore, "[t]he simple fact that some industry publications have a broad enough scope to cover both types of business is insufficient, of itself, to provide evidence of overlapping marketing channels." *Id.*

SafeWorks and Spydercrane both attend CONEXPO, which is an international exposition for the construction industries. However, the size of CONEXPO raises factual issues about the likelihood of convergence. SafeWorks also contends that the parties' respective domain names are similar and that Spydercrane has purchased domain names that include SafeWorks' SPIDER marks. Dkt. No. 40 at 16. These factors can be evidence of convergence of marketing channels, but there remain factual questions about these issues that must be resolved at trial.

### 6. Type of Goods and Degree of Care Exercised by Purchaser

Likelihood of confusion is determined from the standpoint of a "reasonably prudent consumer." *Brookfield*, 174 F.3d at 1060 (internal quotation marks omitted). "Expectations for the reasonably prudent consumer are largely based on his or her level of sophistication and

the nature of the goods and services involved." *Rearden*, 597 F. Supp. 2d at 1025. For example, "[w]hen the goods are expensive, the buyer can be expected to exercise greater care in his purchases," and "[w]hen the buyer has expertise in the field, a higher standard is proper." *Sleekcraft*, 599 F.2d at 353.

The goods at issue are expensive and elaborate equipment, and the customers who purchase these products are sophisticated individuals who are trusted to be a part of costly and dangerous construction projects. This may weigh against a likelihood of confusion, but again, this is not an appropriate issue for summary judgment.

### 7. Defendant's Intent in Selecting the Mark

"[I]ntent to deceive is strong evidence of a likelihood of confusion." *Entrepreneur Media*, 279 F.3d at 1148 (internal quotation marks omitted). "When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Id.* (internal quotation marks omitted). "This factor favors the plaintiff where the alleged infringer adopted his mark with knowledge, actual or constructive, that it was another's trademark." *Brookfield*, 174 F.3d at 1059.

Here, in adopting the SPYDERCRANE mark, SafeWorks contends that Spydercrane intended to exploit SafeWorks' marks and "get a free ride upon the goodwill and reputation associated with SafeWorks' well-known SPIDER® marks." Dkt. No. 40 at 14. Spydercrane's actual intent in adopting the mark is an issue best left for trial.

### 8. Likelihood of Expansion of Product Lines

"Inasmuch as a trademark owner is afforded greater protection against competing goods, a 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." *Sleekcraft*, 599 F.2d at 354. There is a substantial dispute about whether SafeWorks intends to expand its line of cranes. This militates against a decision by summary judgment.

D. <u>Plaintiff's Federal Unfair Competition Claim</u>

The analysis for determining trademark infringement and unfair competition under the Lanham Act is generally identical. *See Brookfield*, 174 F.3d at 1047 n.8. Federal trademark infringement claims under section 32 of the Lanham Act apply to registered marks, while unfair competition claims under section 43(a) of the Lanham Act apply to both registered and unregistered marks and protect against a wider range of practices. In both cases, the plaintiff must prove the existence of a trademark and the subsequent use by another in a manner likely to create consumer confusion. *See Comedy III Prods., Inc. v. New Line Cinema*, 200 F.3d 593, 594 (9th Cir. 2000). Therefore, because summary judgment as to SafeWorks' trademark infringement claim is denied, summary judgment as to its federal unfair competition claim is denied for the same reasons.

E. <u>Plaintiff's State Law Unfair Competition Claim</u>

Washington state courts have also adopted the "likelihood of confusion" test for statutory unfair competition claims. *eAcceleration Corp. v. Trend Micro, Inc.*, 408 F. Supp. 2d 1110, 1114 (W.D. Wash. 2006); *Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 742-43 (Wash. 1987). Therefore, the analysis of an unfair competition claim under Washington's Consumer Protection Act will generally follow that of the trademark infringement claim and will turn on the likelihood of consumer confusion regarding a protectable mark. *See Seattle Endeavors v. Mastro*, 123 Wn.2d 339, 350 (Wash. 1994). Accordingly, because summary judgment as to SafeWorks' trademark infringement claim is denied, summary judgment as to its state law unfair competition claim is denied for the same reasons.

F. <u>Damages</u>

Because summary judgment is denied, the Court does not reach the issue of damages.

G. <u>Spydercrane's Laches Defense</u>

Spydercrane asserts the affirmative defense of laches in this action. Dkt. No. 32. To prevail on a laches defense, a defendant must prove: the claimant unreasonably delayed in

filing suit; and as a result of the delay, the defendant suffered prejudice. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002); *Adidas America, Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1069 (D. Or. 2008). In determining whether a party exercised unreasonable delay in filing suit, the court must assess the length of delay, which is measured from the time the plaintiff knew, or in the exercise of reasonable diligence, should have known about its potential cause of action, and the court must consider whether the plaintiff's delay was reasonable in light of the time allotted by the analogous state law limitations period. *See Jarrow*, 304 F.3d at 838. "If the plaintiff filed suit within the analogous limitations period, the strong presumption is that laches is inapplicable." *Id.* at 835. "However, if suit is filed outside of the analogous limitations period, courts often have presumed that laches is applicable." *Id.*

The Court does not reach the issue of laches. There are genuine issues of fact as to whether SafeWorks knew or should have known of Spydercrane's potentially infringing course of conduct prior to the three-year limitations period, and, if so, the impact of any inaction on its claim for damages.

V. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment, Dkt. No. 40, is DENIED.

DATED this 29th day of September, 2009.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

ORDER
PAGE - 14